IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| OFELIA COLOYAN, | ) CIVIL NO. 03-476 KSC |
| | ) |
| Plaintiff, | ) MEMORANDUM IN SUPPORT OF |
| | ) MOTION |
| vs. | ) |
| | ) |
| WILLIAM P. BADUA; | ) |
| JEFFREY OMAI; | ) |
| SPENCER ANDERSON; | ) |
| NEIL PANG; | ) |
| and DOES 5-10, | ) |
| | ) |
| Defendants. | ) |
| | ) |
| _____ | ) |

MEMORANDUM IN SUPPORT OF MOTION

I.     INTRODUCTION

Plaintiff Ofelia Coloyan (hereinafter "Plaintiff") instituted this lawsuit against

Officers William P. Badua, Jeffrey Omai and Spencer Anderson (collectively

hereinafter "Defendants") for allegedly violating her constitutional rights when

Defendants allegedly searched her home on June 3, 2003, over her objection and

without her consent.  Plaintiff has alleged causes of action, which include

violations of the Fourth and Fourteenth Amendments of the United States

Constitution and Article I, Section 7 of the Constitution of the State of Hawai'i; as

well as emotional distress, difficulty eating and sleeping, mental anguish, anxiety,

embarrassment, humiliation, and shame. In addition, Plaintiff is seeking punitive damages against Defendants for their alleged conduct.

Defendants retained Byron Eliashof, M.D. to conduct an independent psychiatric examination ("IPE") of Plaintiff for purposes of assessing damages. On or about August 10, 2005, Dr. Eliashof issued his report. In response to Dr. Eliashof's report, on or about October 5, 2005, Plaintiff retained Robert C. Marvit, M.D. to review Dr. Eliashof's report and comment on said report. Dr. Marvit's work in this case consisted solely of his review of Dr. Eliashof's report and review of limited medical records of Plaintiff. On or about October 11, 2005, Dr. Marvit issued his "report".

Defendants request that this Honorable Court enter an order to preclude Dr. Marvit's testimony and report at trial. Based upon the fact that Dr. Marvit's work in this case was so limited and so lacking in foundation, his opinions are unreliable and based on speculation.

II.    DISCUSSION

  A.    Dr. Marvit's Testimony Is Unreliable.

Rule 702 of the Federal Rules of Evidence ("FRE") states:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise. In determining the issue of assistance to the trier of fact, the court may consider the trustworthiness and validity of the

scientific technique or mode of analysis employed by the proffered expert.

Fed. R. Evid. 702.

In Daubert vs. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S.Ct. 2786, 125 L. Ed. 2d 469 (1993), the United States Supreme Court ruled that the Federal Rules of Evidence, rather than the Frye test, provides the standard for admitting expert scientific testimony at trial. The Court recognized that the Frye test, or the "general acceptance test," was established in 1923. Since the Frye opinion, the Federal Rules of Evidence were created and it overtakes the field in the arena of expert scientific evidence. The Court ruled that in applying Rule 702 of the Federal Rules of Evidence, the trial court must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify as to scientific knowledge that will assist the trier of fact to understand or determine a fact in issue. Id. at 592-93, 113 S.Ct. at 2796. The Court emphasized that the word "knowledge" in Rule 702 connotes more than a subjective belief or unsupported speculation. Id. at 590, 113 S.Ct. at 2795.

To this end, the Court ruled that the trial court is charged with the obligation to ensure that the expert's testimony both rests on a reliable foundation and is relevant to the task at hand. Id. at 597, 113 S.Ct. at 2799. This analysis focuses upon the soundness of the methodology used by the expert rather than the correctness of the expert's conclusions. Daubert vs. Merrell Dow Pharmaceuticals,

3

Inc., 43 F.3d 1311, 1318 (9th Cir.), ("Daubert II"), *cert. denied*, 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

In Kumho Tire Company, Ltd. vs. Carmichael, 526 U.S. 137, 119 S.Ct. 1167, 143 L. Ed. 2d 238 (1999), the Supreme Court echoed its ruling in Daubert that the trial judge must ensure that any and all scientific testimony is not only relevant, but reliable. However, the Court broadened the application of Daubert by ruling that it applies to all expert testimony, not just scientific testimony.

The Court also clarified the trial court's ability to explore the reliability of the expert testimony. The Court stated:

> [T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable. . . The trial court must have the same kind of latitude in deciding *how* to test an expert's reliability, and to decide whether or when special briefing or other proceedings are needed to investigate reliability, as it enjoys when it decides *whether or not* that expert's relevant testimony is reliable.

Id. at 152, 119 S.Ct. at 1176 (Emphasis in original).

In Kumho Tires, the United Supreme Court held that the methodology employed by the expert in analyzing the data obtained was unreliable and affirmed the District Court's decision to exclude the expert's testimony, even though the Court did not doubt the expert's qualifications. 526 U.S. at 153, 119 S.Ct. at 1176-176. The Court in Kumho Tires stated that the specific issue before the court was not the reasonableness in general of the expert's methodology, but it was the reasonableness of using such an approach, along with the expert's particular

method of analyzing the data obtained, to draw a conclusion regarding the
particular matter to which the expert testimony was directly relevant. Id. at 154,
119 S.Ct. at 1177.

      In this case, during his deposition, Dr. Marvit testified that he was hired on
October 5, 2005 "to review a report by Dr. Byron Eliashof and comment on it in a
sense of any agreement, disagreement for rebuttal purposes." See Exhibit "A",
Deposition of Robert C. Marvit, M.D. Taken on January 12, 2006, 5:17-22, 6:8-19.
When Dr. Marvit drafted his report, he only reviewed Dr. Eliashof's report, a
limited portion of Dr. Steven Lum's medical notes regarding Plaintiff's past visits
from April 1, 2003 to August 18, 2004 and had a doctor's note from Dr. Lum
stating that Plaintiff was excused from work from June 4, 2003 to June 21, 2003.
Id. at 8:23-25, 9:1, 14:7-10.  At the time of Dr. Marvit's oral deposition, he stated
that he had only spent a couple hours on this case and the time he has spent on this
case has not been extensive. Id. at 7:14-18; see also, Exhibit "B", Billing
Statement.  More importantly, Dr. Marvit *never* examined Plaintiff. Id. at 13:19-
25, 14: 1-6.  Dr. Marvit testified that he was only retained for a limited purpose, to
comment on Dr. Eliashof's report. Id.  Dr. Marvit was able to issue a "report" in
this case within a six-day time frame, given that he was retained on
October 5, 2005 and his report is dated October 11, 2005. See Exhibit "B" and
Exhibit "C", Dr. Marvit's Report Dated October 11, 2005.

Although Dr. Marvit was only retained for a limited purpose, to comment on Dr. Eliashof's report, Dr. Marvit rendered several opinions, which include but are not limited to the following: (1) Plaintiff suffered an acute disorder of extreme stress as a result of her interaction with the police in this event; (2) There is no indication that Plaintiff is a malingerer; (3) Plaintiff comes across as a reasonably straightforward person and seems to be a law-abiding, hard-working, honest, good citizen; (4) Plaintiff's recollection of the events is a honest representation; and (5) Although Plaintiff has not had any residual effects (re: emotional distress), the pain doesn't necessarily disappear and it could turn on suddenly as a result of a stressor. Id. at 14:11-25, 15:1-25, 16:1-25, 17:1-25, 18:1-25, 19:1-14, 27:10-25, 28:1-25, 29:1-12; see also, Exhibit "C".

Based on his instructions from Plaintiff's counsel, Dr. Marvit was not able to review all relevant documents pertinent to this case (i.e. relevant pleadings, deposition testimonies of Plaintiff, police officers, other witnesses, all of Plaintiff's medical records re: past and present medical history). Furthermore, Dr. Marvit states numerous times during his deposition that he would have liked to examine Plaintiff and he admits that "it is always good to examine someone [himself], but he wasn't asked to do that." Id. at 33:12-14, 40:8.

In fact, Dr. Marvit waffles when assessing Plaintiff's emotional distress, when he states:

Q.     Do you agree with Dr. Eliashof's opinion that Mrs. Coloyan experienced a period of emotional distress which cleared after three weeks with no psychiatric treatment?

**A.     No.**

Q.     And why is that?

**A.     Because I don't know that to be a fact.  His point is that – yes, I agree with him up to the point where he said, well, it turned off and on like a light switch basically.  In three weeks, she was back to work and business as usual as if nothing happened.**
       **I don't think – that is not the way it works.  Why?  Well, because that's my clinical experience tells me that that is not the way it works.**

Q.     If you were to see Mrs. Coloyan's updated medical records and there was no indication that she was going through any type of stress, emotional distress, emotional disturbance, would you still have that same opinion?

**A.     Well, <u>I would like to examine her if that is the issue because medical records don't always reflect the entirety of the situation.</u>  Granted, she is not a person who complains.  Some people suffer in silence inwardly.  She wants to appear healthier than perhaps she is.**

<u>Id.</u> at 39:11-25, 40:1-15 (Emphasis added).

It is clear from Dr. Marvit's deposition testimony that he depends upon other individuals' statements regarding the facts of this case, and in turn, Dr. Marvit's opinions are based upon <u>pure speculation</u>.  For example, after being asked about Dr. Eliashof's opinion that Plaintiff's primary reason for her emotional distress was that she was concerned about her son, Dr. Marvit responded as follows:

**A.    Well, you can correct me if I'm wrong but I understood from <u>my preliminary conversation with Mr. Schweigert that her son was in fact not involved in dealing drugs</u> and that Eliashof says at the bottom of page 35, "Mrs. Coloyan taken great pride in being an upright individual.  For her to be confronted with the possibility that her son was involved in drug dealing, much less a warrant for his arrest, to have her neighbors be informed that this occurred and have the police search her house would be upsetting."**

  **<u>That to me is saying that the police are responsible for her emotional distress.</u>  That is the way – you can correct me if I am wrong, if I'm overreading it, but, gee that is what it sounds like to me.**

Q.    But if you read on through the rest of the paragraph, I mean, that is only a little capsule summary of --

**A.    That is the first sentence.**

<u>Id.</u> at 43:6-25 (Emphasis added).  The above-mentioned testimony is a sample of

the testimony elicited by Dr. Marvit.  Moreover, since Dr. Marvit has not been able

to review all relevant pleadings, deposition testimonies, etc., Dr. Marvit was over

embellishing the facts of this case during his deposition testimony.  At one point,

Dr. Marvit testified that, "The cops break in there telling [Plaintiff] [her son] is a

junkie and searching the place and drawing guns and God only knows what." <u>Id.</u>

at 44:9-12.  Later, Defendants' counsel clarified the statement regarding the term

"junkie" and whether Dr. Marvit had actual knowledge about the police having

their guns drawn, since there has been no evidence as to that fact.  <u>Id.</u> at 46:25,

47:1-17.  Dr. Marvit stated that he was using the term metaphorically, but he

*assumed* that they were armed.  <u>Id.</u>

8

One of the touchstone factors in <u>Daubert</u> and <u>Kumho Tires</u> is reliability of the expert's testimony. As demonstrated above in this case, there is substantial reason to question the reliability of Dr. Marvit's testimony because (1) Dr. Marvit only spent a couple of hours on this case; (2) Dr. Marvit only reviewed Defendants' expert's report and a limited portion of Plaintiff's medical records; (3) Dr. Marvit didn't examine Plaintiff, despite the fact that he admitted that he would have liked to examine Plaintiff; (4) Dr. Marvit didn't review any of the relevant pleadings in this case; (5) Dr. Marvit didn't review any of the deposition testimony in this case; (6) Dr. Marvit relied upon Plaintiff's counsel representations regarding this case; and (7) Dr. Marvit's opinions are premised on his pure speculation of this case.

B.    <u>Evidence Inadmissible under Rules 401, 402 and 403 of the FRE</u>

If this Court is not inclined to grant Defendants' motion based upon the grounds articulated above, Defendants assert that their motion should be granted because the evidence to be elicited from Dr. Marvit at trial is either irrelevant under Rules 401 and 402 of the Federal Rules of Evidence ("FRE") or is inadmissible under Rule 403 of the FRE.

Rule 401 of the FRE states:

> "Relevant evidence" means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.

9

Fed. R. Evid. 401.

Rule 402 of the FRE states that:

> All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by Act of Congress, by these rules, or by other rules prescribed by the Supreme Court pursuant to statutory authority. Evidence, which is not relevant, is not admissible.

Fed. R. Evid. 402.

Dr. Marvit's testimony is irrelevant because it is not based on facts and therefore lacks the necessary foundation for his opinions to be reliable. Moreover, Dr. Marvit's comments on Dr. Eliashof's report are not relevant to any issue in this case. Dr. Marvit's comments on Dr. Eliashof's report will do nothing to help the trier of fact determine any fact in issue.

More importantly, Dr. Marvit made his comments on Dr. Eliashof's report and went <u>one step further</u> to render his own opinions in this case without any proper foundation. Dr. Marvit cannot articulate any scientific methodology which he employed to comment on Dr. Eliashof's report or in formulating his own opinions. Dr. Marvit engaged in speculation to formulate his opinions.

Rule 403 of the FRE states:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, or misleading to the jury, or by considerations of undue delay, waste of time, or needless presentation of evidence.

Fed. R. Evid. 403.

The above-mentioned testimony from Dr. Marvit risks confusing and misleading the jury.  Although Dr. Marvit may be well qualified as an expert in the field of psychiatry, his testimony is only based upon a review of two documents, Dr. Eliashof's report and a portion of Plaintiff's medical records from Dr. Lum. Without a full review of all relevant documents, pleadings and/or deposition testimony in this case and without examining the Plaintiff, Dr. Marvit's testimony is based upon pure speculation which will mislead and confuse the jury.  Most importantly, Dr. Marvit may give testimony as to the character (i.e. honesty) of Plaintiff, which should definitely be precluded from trial.  The determination of Plaintiff's credibility is for the jury to determine and the jury may be misled by Dr. Marvit's testimony if such testimony is elicited.  Furthermore, Dr. Marvit is expected to testify as to his opinions regarding this case and his opinions are not supported by evidence, and hence, would create confusion, mislead the jury and prejudice the Defendants.

Whatever probative value may be argued in regard to the above testimony, such probative value is greatly outweighed by the prejudice to the Defendants. Given that Dr. Marvit is a well-qualified professional in his area of expertise, the jury may take his opinions, even if there is no evidence to support it, as being true. In turn, Defendants will be prejudiced by Dr. Marvit's testimony, if his testimony is allowed at trial.

III.    CONCLUSION

Based on the foregoing, Defendants respectfully request that this Honorable

Court grant this motion, in limine, and preclude Plaintiff's expert witness' testimony

and report.

DATED:  Honolulu, Hawaii, February 21, 2006.

CARRIE K.S. OKINAGA
Corporation Counsel


By _____
KENDRA K. KAWAI
MARIE MANUELE GAVIGAN
Deputies Corporation Counsel
Attorneys for Defendants