```
  1              IN THE UNITED STATES DISTRICT COURT

  2                  FOR THE DISTRICT OF HAWAII

  3   OFELIA COLOYAN,              )
                                   )CIVIL NO. CV03-476 KSC
  4             Plaintiff,         )
                                   )
  5        vs.                     )
                                   )
  6   WILLIAM P. BADUA; JEFFREY OMAI; )
      SPENCER ANDERSON; NEIL PANG; and )
  7   DOES 5-10,                   )
                                   )
  8             Defendants.        )
      _____)
  9

 10             DEPOSITION OF BYRON ELIASHOF, M.D.

 11   Taken on behalf of the Defendants at 615 Piikoi Street,

 12   Suite 1509, Honolulu, Hawaii, commencing at 2:35 p.m. on

 13   February 23, 2006, pursuant to the Federal Rules of Civil

 14   Procedure.

 15

 16   BEFORE:    SHEILA BRITT LIPTON, CSR NO. 257
                 Notary Public, State of Hawaii
 17

 18
             H O N O L U L U   R E P O R T I N G   S E R V I C E S
 19
                    1000 Bishop Street, Suite 401
 20                    Honolulu, Hawaii 96813

 21                       (808) 524-6288
```

| | |
|---|---|
| 1  Q. | I'm sorry if that's what I said.  I thought I |
| 2 | said the only thing that you did.  I did not mean to |
| 3 | diminish your opinions. |
| 4 | You looked -- You examined Ms. Coloyan, and you |
| 5 | looked at documents that were given to you to look at for |
| 6 | purposes of doing your opinion? |
| 7  A. | Yes, that's correct. |
| 8  Q. | And the documents that you looked at are those |
| 9 | documents identified on page 10? |
| 10  A. | Yes. |
| 11  Q. | I noticed included in the list of documents were |
| 12 | a series of legal pleadings, like the complaints? |
| 13  A. | Yes. |
| 14  Q. | And actually the depositions of the police |
| 15 | officers? |
| 16  A. | Yes. |
| 17  Q. | Now, do you have any idea what the purpose of |
| 18 | giving you depositions of police officers would be for |
| 19 | purposes of you doing a medical examination of this case? |
| 20  A. | Well, the accuracy of Ms. Coloyan's account as to |
| 21 | what actually occurred to upset her is an important issue |
| 22 | here. |
| 23  Q. | Are you looking at the police officers' |
| 24 | accounting as a truthful accounting? |
| 25  A. | I'm looking for consistency and how they match up |

1   with her account.

2   Q.    So did you draw some significance that they're at
3   odds with her account?

4   A.    I drew some significance from the fact, more
5   significance from the fact that they were consistent. And
6   the fact that there was a remark that one of them made we
7   would have had a SWAT team if they were going to enter
8   without permission because of their safety as being
9   significant. So I placed a fair amount of credence on
10  those reports based on that fact as well as the
11  consistency.

12  Q.    So you relied upon the police officers in part in
13  making your prognosis in this case?

14  A.    Not my prognosis. I relied in part on the police
15  officers' account in terms of forming an opinion as to how
16  likely her accuracy would be about her description of what
17  occurred.

18  Q.    And based on that you formed an opinion from what
19  the police officers are saying in their depos as to that
20  accuracy?

21  A.    I think you're over-simplifying it.

22  Q.    Help me.

23  A.    There were a number of developments that went
24  into my forming an opinion about her accuracy or possible
25  inaccuracy I should say. There were her own

```
 1  inconsistencies.  And there was, on the other hand, in
 2  addition to that, the consistency of the officers and the
 3  statement that they would not risk putting themselves at
 4  risk by entering without a SWAT team behind them.
 5  Q.      I notice you went through every police officer
 6  except Neil Pang.  Is there a reason you left Neil Pang
 7  out?
 8  A.      There was nothing in there that was relevant.
 9  Q.      In Neil Pang?
10  A.      That I could find, in my opinion.
11  Q.      And the highlighted words that you do in the
12  police reports are your drawing significance to that?
13  A.      Yes.
14  Q.      Let's take the one officer, Badua.  And I'm
15  talking now in terms of medical significance.  You see
16  that Officer Badua, you've highlighted words, looks like,
17  to the effect --
18  A.      What page are you?
19  Q.      I'm sorry.  Page 13.
20  A.      Go on.
21  Q.      I noticed that you are focusing on, looks like
22  the words about being invited in.  I don't mean to
23  overstate it.  But looks like that's the purpose of
24  drawing emphasis to that in Badua knocks on the door and
25  she invited him in, words to that effect.
```

```
1    A.      That's his account.
2    Q.      You are putting that into emphasis because you
3    want to make it clear that his opinion that he was invited
4    in?
5    A.      Yes.
6    Q.      You understand Ms. Coloyan says that that didn't
7    happen?
8    A.      Yes.
9    Q.      You certainly picked that up from your interview
10   of her?
11   A.      Well, it's throughout my history of present
12   illness.  And it's also referred to and also highlighted
13   as this is highlighted in her deposition.
14   Q.      Now, you've also made it clear that you don't
15   believe Ms. Coloyan is intentionally misrepresenting
16   facts?
17   A.      That's correct.
18   Q.      Are you suggesting then that she did do what Mr.
19   Badua is saying she did but just forgot about it because
20   of the exigency of the situation?
21   A.      I wasn't there so I don't know.  But I think
22   there's a very significant possibility that that occurred
23   based on the other mistakes she made about what occurred,
24   like the number of police officers that were in her house,
25   whether they just came in or invited themselves in, and
```

```
 1   some of the other inconsistencies that I referred to.
 2   Q.      Are there any other inconsistencies that you
 3   haven't referred to that were on your mind to help you
 4   want to highlight these words?
 5   A.      Not that I can think of.
 6   Q.      Now, you were given the entire depositions of all
 7   these officers, right?
 8   A.      Yes.
 9   Q.      And yet you selected just these portions. And, I
10   take it, you selected these portions for a reason?
11   A.      Yes.
12   Q.      And what was that reason?
13   A.      I thought they were relevant to the questions
14   being asked.
15   Q.      Meaning?
16   A.      Meaning were they invited in or did they go in
17   uninvited. And I was looking, as I said, to see if there
18   was consistency in their account.
19   Q.      Have you done cases involving police officers
20   before where there's a number of police officers
21   testifying about a particular incident?
22   A.      Yes.
23   Q.      And have you found -- Have you ever heard of a
24   term called the code of silence?
25   A.      Yes.
```

```
 1   Q.        What do you understand --
 2             MS. KAWAI:  Objection.  Relevance.  Just for the
 3   record.
 4   BY MR. SCHWEIGERT:
 5   Q.        What do you understand the code of silence to be?
 6             MS. KAWAI:  Same objection.  Sorry.
 7             THE WITNESS:  The code of silence occurs in all
 8   kinds of settings.  When there are groups of people
 9   working together in which people agree not to acknowledge
10   that something has occurred, or to portray as having
11   occurred that didn't.  They agree to the same account.
12   That happens on the waterfront.  It happens in the
13   military.  It happens with police officers.  This kind of
14   phenomena occurs in a variety of settings.
15   BY MR. SCHWEIGERT:
16   Q.        For purposes of evaluating these police officers'
17   testimony, did you interview any of these police officers?
18   A.        No.
19   Q.        Did you do any other reports about this
20   particular incident but for those documents you've
21   identified in your report?
22   A.        No.
23   Q.        I also picked up that you looked at this lady as
24   a hard working lady.  Is that a fair statement to make?
25   A.        I would say she's a very hard working lady.
```

```
1   STATE OF HAWAII            )
                               )  SS.
2   CITY AND COUNTY OF HONOLULU )
```

3       I, SHEILA BRITT LIPTON, CSR NO. 257, Notary Public

4   in and for the State of Hawaii, do hereby certify:

5       That on February 23, 2006, 2:35 p.m. appeared

6   before me BYRON ELIASHOF, M.D., the witness whose

7   deposition is contained herein; that prior to being

8   examined, the deponent was by me duly sworn; that the

9   deposition was taken in machine shorthand by me and was

10  thereafter reduced to typewriting under my supervision;

11  that the foregoing represents, to the best of my ability,

12  a correct transcript of the deposition had at that time;

13      That the deponent was notified through counsel, by

14  mail or by telephone to appear and sign; that if the

15  deposition is filed without signature, either the reading

16  and signing of the deposition were waived by stipulation

17  of all parties or the deponent has failed to appear, and

18  the deposition is therefore filed pursuant to Rule 30(e),

19  Hawaii Rules of Civil Procedure.

21  Date: 2-23-06

*Sheila Britt Lipton*
SHEILA BRITT LIPTON, CSR NO. 257
Notary Public, State of Hawaii
My Commission Expires: 5-9-2009